IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:21-CV-00155-KDB-DCK

JAHVON T MCDOWELL,

    Plaintiff,

v.

CITY OF MOORESVILLE,

    Defendant.

ORDER

**THIS MATTER** is before the Court on Defendant Town[1] of Mooresville's ("Mooresville") Motion for Summary Judgment (Doc. No. 16). The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court will in part **GRANT** and in part **DENY** the motion. Plaintiff Jahvon McDowell is a former Mooresville Police officer who filed this action alleging that Mooresville did not promote him because of his race and then terminated him discriminatorily and in retaliation for his filing of an EEOC charge against Mooresville. Plaintiff has withdrawn his claims of race discrimination in the promotion process. With respect to his retaliation claim, the Court holds that a reasonable jury could not find that he has presented sufficient evidence of a prima facie case of retaliation so summary judgment must also be granted on that claim. However, the Court finds that there is sufficient evidence from which a jury could determine that McDowell's termination in response to his being untruthful in his application for promotion and during the related interview process

---

[1] Plaintiff has captioned its action against the "City" of Mooresville, which apparently is incorrect. However, Defendant has not disputed the claims against it on this basis.

was based on his race where white officers were not similarly terminated for acts of dishonesty. Therefore, summary judgment will be denied on McDowell's claims of a discriminatory discharge.

## I. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co., et al.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *8.929 Acres of Land,* 36 F.4th at 252. "A fact is material if it might affect the outcome of the suit under the governing law." *Id.*, (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is warranted); *United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022). If the movant satisfies his initial burden to demonstrate "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmovant to "present specific facts showing that there is a genuine issue for trial." *8.929 Acres of Land,* 36 F.4th at 252, quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "The mere existence of *some* alleged factual dispute between the parties will not defeat an

2

otherwise properly supported motion for summary judgment. *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, *inter alia*, "citing to particular parts of the materials of record" and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Fed. R. Civ. P. 56(c)(1)(A); *8.929 Acres of Land,* 36 F.4th at 252, quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

Still, summary judgment is not intended to be a substitute for a trial of the facts. *Anderson*, 477 U.S. at 249. In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). In the end, the relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## II.     FACTS AND PROCEDURAL HISTORY

Plaintiff McDowell is an African American man who was hired by the Mooresville Police Department ("MPD") as a police officer on or about April 23, 2018. Prior to joining the MPD, McDowell worked in the East Spencer Police Department ("ESPD") from 2011 through 2015. Although the full characterization of his time at ESPD is somewhat disputed, it appears

3

undisputed that McDowell did not serve as a "Sergeant " or "Investigator" in the ESPD (he claims to have requested the title of Corporal rather than Sergeant ) and held a position below "2nd in command" for a significant period during his four year tenure. McDowell admits that in 2013 he was "demoted to a position of Officer," which he held until 2015. Therefore, even under McDowell's own declaration, he was not "2nd in Command" for more than 2 years.

During McDowell's employment with the MPD, he received good performance evaluations and positive comments from the community. He was ranked as exceeding expectations at the end of his probationary period and again at the end of his annual review in June of 2019. *See* Doc. Nos. 27-1, 27-2. Also, two managers wrote positive letters of reference for him in November 2019. *See* Doc. No. 27-3. However, his MPD employment was not without tension. In July 2019, McDowell filed an EEOC charge against MPD alleging that he had been unlawfully retaliated against in June of 2019 for complaints he had made in July 2018 related to the department's Field Training Officer program.

MPD maintains a formal structure for considering and implementing promotions. The MPD Promotional Process Policy, Doc. No. 16-2 at Ex. D, contains minimum qualifications to apply for each rank at the MPD. For example, applicants for the Captain position must currently hold the rank of Sergeant with the MPD. Likewise, applicants for Sergeant must currently hold the rank of Corporal with the MPD. *Id*. Recognizing that some applicants may have obtained qualifying experience at other police departments, the Promotional Process Policy permits employees to request a waiver from the MPD Chief based on their prior experience. Doc. No. 16-2 at ¶ 14. When any MPD officer requests a waiver of a rank prerequisite based on stated

prior experience, that officer's representations are subject to a vetting process to verify and confirm their truthfulness and accuracy. *Id*. at ¶ 16.

In November of 2019, the MPD announced that it would be accepting applications for promotions into a number of open positions with the Ranks of Captain, Sergeant, and Corporal. McDowell, who was a Patrol Officer at the time, was only eligible to interview for the Corporal position, unless he requested and received a waiver. McDowell requested and received a waiver to apply for both the Captain and Sergeant positions. Doc. No. 16-2 at ¶ 19, Ex. E. In his letter seeking a waiver, McDowell listed the following qualifications (among others) to support his request: "Prior experience as a Corporal and a Sergeant," and "2nd in Command underneath Chief for nearly 4 years." Three other officers – one African American and two Caucasians – were also granted waivers to participate in the promotion process for a Sergeant position. *Id*. at ¶¶ 21, 23. McDowell submitted applications for the Captain and Sergeant positions, each with a certification that the information was true and complete, and that any false information could result in an applicant's dismissal. *Id*. at ¶ 22; Ex. F, p. 10; Ex. G, p. 10.

All four applicants who received waivers to participate in the promotion process had their representations vetted for accuracy. During that process, which included communications with prior employers, some of the representations made by the Plaintiff in seeking a waiver (and in support of his application) could not be initially confirmed, including that: (1) he had "prior experience as… a Sergeant"; (2) he had been an "Investigator"; and (3) he had been "2nd in Command underneath Chief for nearly 4 years" *Id*. at ¶ 25, Ex. E.

As the vetting process continued, the MPD moved forward with interviews for the positions. The interviews were conducted by three-person panels, with a single panel

5

interviewing all candidates for a particular rank. Doc. No. 16-4 at ¶ 10. The panel members scored the applicants based on their responses to a standardized set of questions then ranked them according to their combined scores. *Id.* Once the applicants were ranked, available promotions were offered in order of interview scores, with the highest scoring applicant receiving the first offer. *Id*. at ¶ 12. Further, the process did not end after all initially available positions were filled. The promotional lists for each rank were maintained for the following year, until December 2020, and were used to fill any positions that opened during that time. *Id.* at ¶13.

There were seven applicants for the Captain position, and all applicants other than McDowell then held the rank of Sergeant with the MPD. *Id*. at ¶¶ 14, 16. During his interview, McDowell candidly admitted that Sergeants Christopher Jorgenson and Buck Goodale would be the best for the Captain position. *Id*. at ¶ 19, Ex. A. Ultimately, McDowell scored last in the group of applicants for the Captain position. *Id*. at ¶ 20. So, after the three available Captain positions were filled, McDowell was notified that he was fourth on the list for any Captain positions that opened between then and December 2020. *Id.*

Interviews for the Sergeant position were conducted by a different three-person panel. There were seventeen applicants for the Sergeant position, with six initial open positions. Doc. No. 16-5 at ¶7. Based on his performance during the Sergeant interview, McDowell tied for twelfth in the group of applicants for the position. *Id*. at ¶ 14. Two white applicants were ranked below McDowell. *Id*. at ¶ 15. Also, another African American applicant for the position scored higher than McDowell and other white applicants and ultimately received a promotion to Sergeant through the promotion process, albeit only after he filed an EEOC charge related to

6

the promotion process. *Id*. at ¶¶ 22, 46-48. Had McDowell remained employed with the MPD, he would have been seventh in line for a Sergeant position until December 2020. *Id*. at ¶ 18.

On December 6, 2019, McDowell was informed of MPD's decisions to select other candidates, who all were white, for the then available Sergeant and Captain positions. Three days later, on December 9, 2019, McDowell filed a charge of discrimination with the EEOC claiming that he had "been discriminated and retaliated against because of my race (black) and my engagement in a protected activity" in the denial of a promotion.

Following McDowell's second EEOC charge, and although the interview and promotion process had concluded, MPD continued in January 2020 to investigate McDowell's statements concerning his experience which had not been confirmed. MPD contends that the investigation continued because MPD maintains policies, including the MPD Code of Ethics, Doc. No. 16-2, Ex. B and Rules of Conduct. *Id*. at Ex. C. These policies include the requirement that "Employees shall be truthful and forthcoming when answering all questions directed or related to their employment and the operations of the department." Doc. No. 16-2, Exs. B, C. at *General Order 100.03; B. Canon of Ethics (10)*); *see also, General Order 300.03; Y. Truthfulness (1),(2)* ("Employees are directly accountable for their actions through the chain of command to the Chief of Police, and shall have a duty to truthfully acknowledge and explain their actions and decisions when requested to do so by an authorized member of this agency without deception or subterfuge." … "Employees shall cooperate fully in any internal administrative investigation conducted by this agency and shall provide complete and accurate information in regard to any issue under investigation.").

After reviewing all of McDowell's personnel file materials and meeting with ESPD's personnel Chief and an ESPD Captain on January 21, 2020, MPD Assistant Chief Cooke believed that McDowell may have affirmatively misrepresented his experience in connection with the promotion process. Doc. No. 16-2 at ¶ 28-29. On March 20, 2020, MPD Chief Campurciani instructed Cooke and another assistant chief, Frank Falzone, to conduct a formal administrative investigation into McDowell's representations. *Id*. As part of that investigation, the two Assistant Chiefs interviewed McDowell on March 23, 2020.

At the outset of the Interview, the Plaintiff was informed that he was required to answer all questions fully, truthfully, and completely, and that a failure to do so would be deemed insubordination that could lead to disciplinary action. The Interview was recorded on Falzone's Body Worn Camera. *Id*. at ¶¶ 31-32. Based on what they allege to have been "evasive" answers, (for example, when the Plaintiff was asked about whether he had been a Sergeant, he responded that he had performed the job duties of a Sergeant), Cooke and Falzone determined that the Plaintiff's failure to provide full, truthful, and complete answers during the Interview constituted insubordination and at the end of the interview they placed McDowell on administrative leave. *Id*. at ¶¶ 33-37.

As a result of the administrative investigation, including the interview, Cooke and Falzone concluded that the Plaintiff made material misrepresentations of his qualifications and experiences in connection with the waiver letter that McDowell submitted in order to participate in the promotion process, as well as the applications themselves. *Id*. at ¶ 41. Cooke prepared a report detailing the findings, which he provided to Chief Campurciani. Doc. No. 16-2, ¶ 29, Ex. H. The Report recommended that Plaintiff's employment with the MPD be terminated. *Id*.

8

Case 5:21-cv-00155-KDB-DCK   Document 31   Filed 03/03/23   Page 8 of 17

Chief Campurciani reviewed the report and the video of the interview, and also concluded that the Plaintiff's conduct during and after the interview was insubordinate. *Id*. at ¶¶ 32-34. Chief Campurciani then moved forward with the termination of the Plaintiff's employment, effective April 23, 2020. *Id*. at ¶ 40. The Plaintiff was provided with a Notice of Disciplinary Action, which set forth the reasons for the termination of the Plaintiff's employment as "multiple policy violations" in connection with "(1) your material misrepresentations and omissions made in connection with your applications for promotion at the MPD; and (2) your material misrepresentations and other unacceptable conduct during an interview connected with the investigation of your underlying misrepresentations." *Id*. at ¶¶ 40-41, Ex. K.

Following his termination, McDowell filed his third EEOC charge of discrimination on April 29, 2020, alleging that he had been the victim of race discrimination and retaliation in his suspension and termination. Plaintiff then timely filed his Complaint in this action on October 27, 2021, asserting two broad claims for relief. Doc. No. 1. First, the Complaint alleges that Mooresville violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. by discriminating against the Plaintiff on the basis of his race with respect to his termination of employment, and because the Plaintiff did not receive a promotion.[2] Doc. No. 1 at ¶¶ 22-25. Plaintiff is no longer pursuing his claim that he was discriminated against when he not promoted. Doc. No. 27 at 1, fn. 1. Second, the Complaint alleges that Mooresville violated Title VII by retaliating against the Plaintiff for filing EEOC charges, again by terminating his employment and

---

[2] Discovery in this matter closed on November 18, 2022. During discovery, Defendant served Requests for Admission, which were never answered and are therefore deemed admitted. *See* Doc. No. 16-6. Those admissions relate primarily to McDowell's alleged failure to accurately portray his previous experience at the ESPD as described above.

9

not giving him a promotion, and by subjecting him to an internal investigation. Doc. No. 1 at ¶¶ 26-30.

Mooresville has moved for summary judgment on all of McDowell's claims. As part of his response, McDowell has filed an affidavit in support of his claims. The affidavit details the grounds for McDowell's belief that he was subjected to discriminatory discipline in excess of that imposed on white MPD officers. *See* Doc. No. 27-10 at ¶¶ 3-6. These include his allegations that:

> Shawn Elliott and Randall Crow, both white males, improperly parked a seized vehicle at a location other than the police department and then used drug money to purchase a battery for the seized vehicle. They were not initially forthcoming or truthful with respect to this matter. They remain employed with the department.
> …
>
> John Vanderbilt, a white male, was demoted from Detective because of the filing of a false complaint. He was not terminated. He remains employed with the Department.

*Id*. at ¶¶ 4-5.

The motion for summary judgment is fully briefed, including supplemental briefing ordered by the Court, and is now ripe for a decision.

### III. DISCUSSION

Under Title VII, it is unlawful for employers to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42. U.S.C. § 20000e-2. McDowell alleges that he was discharged due to his race. A plaintiff may establish a Title VII violation in two ways. First, a plaintiff may demonstrate through direct evidence that illegal discrimination motivated an employer's adverse employment action. Alternatively, a plaintiff may proceed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See generally Hill v. Lockheed Martin Logistics Mgmt., Inc*., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc).

Direct evidence is evidence from which no inference is required. To show racial discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the part of the decisionmaker involved in the adverse employment action. *See Hill*, at 286–91. Such direct evidence would include a decisionmaker's statement that he terminated a plaintiff due to his race. McDowell has not offered any direct evidence of race discrimination. Instead, he relies on the *McDonnell Douglas* test to prove his claims.

Under the *McDonnell Douglas* analysis, a plaintiff must first establish a prima facie case of discrimination. *See, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the defendant took the adverse employment action "for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254. If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons but were a pretext for discrimination." *Hill*, 354 F.3d at 285; *see also Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] ha[s] to prove 'both that the reason was false, and that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)).

The elements of a prima facie claim of discrimination under Title VII are well established. "The plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (citing *McDonnell Douglas*, 411 U.S. at 802); *Goode v. Cent. Va. Legal Aid Soc.*

11

*Inc.*, 807 F.3d. 619, 626 (4th Cir. 2015); *Redmon v. Flexsol Packaging Corp.*, No. 519CV00124KDBDSC, 2021 WL 1109361, at *5–6 (W.D.N.C. Mar. 23, 2021).

More specifically, to establish a prima facie case of discrimination in the enforcement of employee disciplinary measures, the plaintiff must show: (1) that he is a member of a class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees. *See Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir. 1993); *Sook Yon v. Sebilias,* 481 F. Appendix 848, 850 (4th Cir. 2012); *Moore v. City of Charlotte,* 754 F.2d 1100, 1105–06 (4th Cir. 1985).

For purposes of this motion, Mooresville does not dispute that as an African-American man, McDowell is within a protected class for the purpose of making a claim for race discrimination. Also, there is no dispute that McDowell was terminated, which is an adverse employment action or that he had a "satisfactory job performance" other than with respect to the conduct which led to his termination. Thus, whether he experienced "different treatment from similarly situated employees outside the protected class" is at issue in this motion. Similarly, in the "alternative" prima facie case, the parties dispute whether his discipline was more severe than enforced against employees outside the protected class who engaged in sufficiently similar alleged misconduct.

The Court finds that, in the context of this motion in which it is required to view all evidence in the light most favorable to the Plaintiff, including all reasonable inferences, Plaintiff has sufficiently met his burden to establish a prima facie case of a Title VII violation based on discriminatory discipline. Putting aside Defendant's strident and dismissive rhetoric, Plaintiff's

12

allegations described above concerning the conduct and lesser discipline meted out to white officers is far more than "generalized allegations." Rather, Plaintiff specifically alleges the names of the white officers who were treated better and their particular misconduct.[3] Defendant also argues that the misconduct of the white officers alleged by Plaintiff is – as a matter of law – not "comparable in seriousness" to Plaintiff's alleged wrongdoing. The Court disagrees. All of the misconduct alleged against both the white officers and Plaintiff involve dishonesty. Further, a jury could – but need not – reasonably conclude that improperly hiding a seized vehicle at a location other than the police department and then using drug money to purchase a battery for the seized vehicle as well as lying about the incident when asked is not only "comparable" but worse than exaggerating a resume in an effort to gain a promotion.[4] Accordingly, Plaintiff has established a prima facie case of discriminatory discipline for the purposes of this motion.

The second step in the *McDonald Douglas* analysis is whether Mooresville has produced evidence that it took the adverse employment action "for a legitimate, nondiscriminatory reason." Plaintiff does not dispute that Mooresville has offered a non-discriminatory reason for the discharge; that is Plaintiff's dishonesty in seeking a promotion and his conduct during MPD's investigation.

---

[3] Defendant properly questions whether Plaintiff's allegations with respect to the alleged misconduct and disciplinary proceedings related to the white officers are admissible evidence. Again, giving Plaintiff the fullest measure of inferences at summary judgment, Plaintiff impliedly asserts personal knowledge of these incidents sufficient to make the evidence admissible. However, Plaintiff is forewarned that at trial the Court will strictly require proof of an adequate foundation for his alleged personal knowledge of these events or other documentary / testimonial evidence proving their existence (such as subpoenaed MPD employment and/or disciplinary records or the testimony of knowledgeable MPD officials).

[4] To be clear, the Court does not in any way condone Plaintiff's alleged dishonesty in the promotion process, but is only considering that dishonesty relative to the white officers' alleged misconduct.

With Defendant having met the burden of producing a non-discriminatory reason for the termination, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons but were a pretext for discrimination." A plaintiff can demonstrate pretext by showing that the alleged non-discriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of race discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir.2004) (citation omitted). In conducting this analysis, the court does not sit to decide whether the defendant in fact discriminated against the plaintiff based on race. *See, e.g., Holland v. Washington Homes, Inc.*, 487 F.3d 208, 217 (4th Cir.2007); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279–80 (4th Cir.2000). Rather, the focus concerns whether plaintiff has raised a genuine issue of material fact as to pretext. *See, e.g., Hux*, 451 F.3d at 314–19; *Dugan v. Albemarle Cty. Sch. Bd.*, 293 F.3d 716, 722 (4th Cir.2002).

Here, Plaintiff has alleged both that Defendant's proffered reason for his termination is untrue and that there is sufficient circumstantial evidence of MPD's racial discrimination[5] from which a jury might reasonably find that his firing was a pretext for discrimination. While Plaintiff has admitted lying during the promotion process, viewing the evidence most favorably for the Plaintiff, a jury could find that MPD's conclusion that he was "insubordinate" during the investigation to be contrived (characterizing his behavior as explanatory rather than evasive) or could conclude based on the alleged circumstantial evidence that there was a racially discriminatory culture at MPD. Of course, a jury need not – and may well not – make any of these findings. But, the Court's limited role in ruling on this motion is to determine whether a

---

[5] Again, Plaintiff is cautioned that he will only be permitted to present non-hearsay circumstantial evidence supported by a proper evidentiary foundation.

14

reasonable jury *could* rule in favor of the Plaintiff on the issue of "pretext," and the Court finds that it could.

In sum, the Court finds that Plaintiff may prevail on his Title VII claim of discriminatory discharge so Defendant is not entitled to summary judgment on that claim.

McDowell's remaining claim is that he was terminated in retaliation for his opposition to Mooresville's discriminatory conduct. Title VII prohibits an employer from discriminating against its employee because he "has opposed any ... unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a). As with his wrongful termination claim, McDowell may support a retaliation claim in violation of Title VII either through direct and indirect evidence of an intent to retaliate, or through the burden-shifting framework of *McDonnell Douglas*. *See Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). Here, McDowell has offered no direct or indirect evidence of retaliatory animus, so he must proceed under the *McDonnel-Douglas* framework.

Under this framework, a plaintiff must first make a prima facie case of retaliation. *Foster*, 787 F.3d at 250. To do so, McDowell must show that "(1) he engaged in protected conduct; (2) an adverse action was taken against him by [Defendant]; and (3) there was a causal connection between the first two elements." *Ulrich v. CEXEC, Inc.*, 709 F. App'x 750, 753 (4th Cir. 2017) (per curiam). Then, if the defendant offers a legitimate, non-discriminatory reason for the action in question, Plaintiff must prove by a preponderance of the evidence that the proffered reason was pretextual. *Id.*

Title VII recognizes two forms of protected activity: (1) "opposition" activity, i.e., "oppos[ing] any practice made an unlawful employment practice"; and (2) "participation" activity, i.e., "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an

15

investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018); *Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 255, 259 (4th Cir. 1998). McDowell's complaints to his superiors concerning alleged racial discrimination and his filing of EEOC claims are respectively "opposition" and "participation" protected activity.

However, to prove retaliation in violation of Title VII, a plaintiff must also prove that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. *See Univ. of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 359 (2013). McDowell has failed to provide any evidence of a timely causal connection between his alleged "protected conduct" and his termination, which occurred more than four months after his December 2019 EEOC charge. *See, e.g., Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing cases holding that 3- and 4-month interim periods were insufficient to establish causation); *Roberts v. Glenn Indus. Grp.*, 998 F.3d 111, 127 (4th Cir. 2021) (explaining "absent other evidence," even a two-month gap will "weaken significantly the inference of causation" between the protected action and the alleged retaliatory conduct (quotation marks omitted)). Indeed, earlier this week in an unpublished decision, the Fourth Circuit reaffirmed the principle that a four-month gap between the alleged protected activity and the adverse employment action is "too long to support an inference of causation based on temporal proximity alone." *White v. Vance County Sheriff, et al.*, No. 21-2424, 2023 WL 2263018, at *3 (4th Cir. Feb. 28, 2023). Therefore, McDowell has failed to establish a prima facie case of retaliation under Title VII, by failing to show that the adverse employment action taken against him was causally connected to his protected conduct. Accordingly, summary judgment will be granted to Mooresville on McDowell's retaliation claim.

16

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (Doc. No. 16) is **GRANTED in part and DENIED in part** as described above; and

2. This case shall proceed to a trial on the merits to begin on **May 22, 2023**, at 9:30 a.m. in Courtroom, 200 W Broad St, Statesville, NC 28677 on the remaining claims in this matter **in the absence of a voluntary resolution of the dispute among the parties.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 3, 2023

Kenneth D. Bell
United States District Judge